```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

KENNETH DOLL, SR. and          :
KENNETH DOLL, JR.
         Plaintiffs            :

         vs.                   :   CIVIL NO. 1:CV-08-0675

PATROLMAN TERRY D. WILLIAMS,   :
individually and as a police officer
for the TOWNSHIP OF CARROLL, and   :
PATROLMAN MICHAEL BAILEY,
individually and as a police officer   :
for the TOWNSHIP OF CARROLL, and
the TOWNSHIP OF CARROLL,       :
         Defendants


*M E M O R A N D U M*

I.    *Introduction*

Plaintiffs, Kenneth Doll, Sr. and Kenneth Doll, Jr., filed this action under 42 U.S.C. § 1983 against Carroll Township and two of its police officers, Terry D. Williams and Michael Bailey. The plaintiffs allege federal civil-rights claims against each of the defendants for unlawful arrest, malicious prosecution, and excessive force.

They aver the Township is liable because of policies or customs that permit its police officers to engage in unreasonable force, false arrest and malicious prosecution. The plaintiffs also allege that the Township failed to train its officers in the legal use of force and failed to investigate and take corrective action when its officers did use illegal force.

We are considering the defendants' motion for partial summary judgment. We will evaluate the motion under the well

established standard. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

II.  *Discussion*

This case arises from a fire that destroyed Kenneth Doll, Jr.'s auto-repair business. He and his father got into a physical confrontation with the defendant police officers when the latter tried to move them back from the fire scene, eventually leading to charges of aggravated assault, resisting arrest and disorderly conduct. The defendant police officers say Plaintiffs refused an order to leave the fire scene for their own safety and that they had to be physically subdued to arrest them. For their part, Plaintiffs assert the officers attacked them without warning.

Aside from whether the defendants used reasonable force, it is undisputed that in the course of arresting Kenneth Doll, Jr., defendant Bailey struck him at least two times on the head with a flashlight, defendant Williams tasered him twice, and Bailey pepper-sprayed him once. In arresting Kenneth Doll, Sr., Williams tasered him once.

Both an unlawful-arrest claim and a malicious-prosecution claim have as an element a lack of probable cause. *See Pittman v. McDuffy*, 240 Fed. Appx. 524, 526 (3d Cir. 2007) (per curiam) (nonprecedential) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)(false-arrest

claim), and *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)(malicious-prosecution claim)). The defendants move to dismiss these claims by arguing that the record shows that the defendant police officers had probable cause to arrest the plaintiffs on the three charges. They have two supports for this argument.

First, a Pennsylvania magisterial district judge determined at a preliminary hearing that Pennsylvania had established a prima facie case for all three charges, and such a determination is "weighty evidence" of probable cause, citing *Brandt v. Borough of Palmyra*, No. 08-677, 2009 U.S. Dist. Lexis 27160, at *10-11 (M.D. Pa. Mar. 30, 2009). We reject this argument. That a magisterial district judge determined that Pennsylvania had established a prima facie case may indeed be "weighty evidence," but it is not determinative, and we must consider Plaintiffs' testimony in the instant case that the two police officers attacked them without warning. If the fact finder believes the plaintiffs, there would be no probable cause.

Second, the defendants rely on the fact that Plaintiffs' counsel, who represented them in the criminal proceedings as well, conceded at the preliminary hearing that there was probable cause for the charges. We reject this argument as well because the statement must be read in context. It was made at a preliminary hearing, where the judicial officer

only has to determine if the prosecutor has presented sufficient evidence for a trial to be held, not make credibility determinations. *See Commonwealth v. Wojdak*, 502 Pa. 359, 369-70, 466 A.2d 991, 996-97 (1983). Hence counsel's statement was not an admission of the truth of the evidence admitted to establish probable cause.

  The defendants next argue that the malicious-prosecution claim fails as against the police officers because they did not initiate the prosecutions; the district attorney did. They cite in support *Zeglen v. Miller*, No. 04-1940, 2008 U.S. Dist. Lexis 20344, at *30-33 (M.D. Pa. Mar. 12, 2008), *aff'd*, *Zeglen v. Pappert*, 317 Fed. Appx. 233 (3d Cir. 2009)(nonprecedential). *Zeglen* does say that, generally, a malicious-prosecution claim is a claim against a prosecutor, not a police officer, on the reasoning that the prosecutor initiates the prosecution. However, it also says that such a claim can proceed against a police officer if the officer knowingly provided false information to the prosecutor. *Id.* at 31-32. In the instant case, the plaintiffs state that the defendant police officers provided false testimony as to the physical altercation that occurred on the night of the fire. Hence this claim can proceed.

  The defendants have also moved for summary judgment on the claim against the Township, arguing that there is no evidence to establish liability on its part. A civil-rights

claim against a municipality cannot proceed on the basis of respondeat superior. *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007)(citing *Monell*). Instead, the plaintiff must establish that a policy or custom of the municipality caused the constitutional violation. *Watson*, 478 F.3d at 155. A policy is established when it is shown that "a decisionmaker possessing final authority to establish municipal policy with respect to the action" has "issue[d] an official proclamation, policy, or edict." *Id.* (quoted case, internal quotation marks, and internal brackets omitted). A custom is established when, in the absence of a formal statement of policy, it can be shown "that a given course of conduct . . . is so well settled and permanent as virtually to constitute law." *Id.* at 156 (quoting *Monell*)(internal quotation marks omitted). Custom is usually established by knowledge and acquiescence, *id.*, that is, knowledge by the policymaker of an unconstitutional practice by lower level employees and acquiescence in that practice. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996)(custom is established by policymakers being "aware of similar unlawful conduct in the past, but fail[ing] to take precautions against future violations")(quoted case omitted).

In the instant case, Plaintiffs contend that the Township has an unconstitutional policy of allowing its police

5

officers to use a taser or pepper spray "any time a person under arrest does not comply with a verbal command." (Doc. 33, Opp'n Br. at p. 19). In support of this contention, they rely on the following deposition testimony of Officer Williams, elicited by Plaintiff's counsel:

> Q: When is the use of a TASER appropriate?
>
> A: Typically when a person has violated the law and they're under arrest and they don't comply with your verbal commands.
>
> Q: How do you know they're not complying with your verbal commands?
>
> A: It could be a number of reasons. It could be somebody that has a crazy look in their eye, that doesn't speak to you, doesn't acknowledge you.

(Doc. 34-9, CM/ECF p. 19). Williams also testified that the use of pepper spray is "on the same level" of policy. (*Id.*, p. 20).

Describing this as a policy of allowing "widespread and unprovoked use of the taser," (doc. 33, Opp'n Br. at p. 19), Plaintiffs contend that the Township should be held liable for the actions of the defendant officers, noting that the chief of police and the officers testified that the officers followed Township policy while arresting Plaintiffs. (Doc. 34-11, Francis Dep. at CM/ECF p. 15; doc. 34-9, Williams Dep. at CM/ECF p. 33; doc. 34-10, Bailey Dep. at CM/ECF p. 28 (the chief told Bailey that his use of force was consistent with department policy)).

We have carefully considered this argument, but we must agree with the defendants when they say that the testimony

6

of Williams upon which it is based has context, and when that context is considered, Williams's testimony does not support the argument that the Township has a policy of permitting police officers to use a taser or pepper spray "any time a person under arrest does not comply with a verbal command."

As the defendants point out, immediately after Williams answered the last question quoted above, his deposition testimony continued as follows:

> Q: It would be appropriate to use a TASER in those circumstances?
>
> A: It would be appropriate. It could be somebody who verbally tells you that you're not – they're not going to be arrested or they could touch the officer, assaulting the officer. Those instances would warrant the use of a TASER.

(Doc. 34-9, CM/ECF pp. 19-20).

Taking this testimony as a whole, Williams was saying that using the taser would be appropriate in certain circumstances, for example, when a person says they will not submit to arrest or touches or assaults the officer. The testimony was qualified. It cannot be read as a statement of a broad policy allowing the use of a taser anytime a person resists any verbal command.

We must also take into account the Township's formal policy (doc. 27-13) concerning the general use of force and the use of tasers. In pertinent part, that policy provides as follows. The use of force shall comply with the United States

7

Constitution and the Constitution and laws of Pennsylvania. (Use of Force Policy, § IV. A). "When the use of force becomes necessary, only reasonable force shall be employed." (*Id.* § V.B). "Prior to employing non-deadly force, the officer must ascertain that the violator has the ability, opportunity and presents a danger that justifies the use of such force" (*Id.* § IV.A). "Prior to using nondeadly force or escalating the level of non-deadly force employed, the officer must ascertain that all other less forceful avenues of action have been exhausted, were impracticable or were unavailable. Once resistance ceases, no further force may be exerted." (Id., § VI.B).

The policy further provides the "use of force shall be employed only when the violator acts in non-compliance to a lawful arrest or order." (*Id.* § V.C). "As the violator's actions in non-compliance escalates, the use of force employed may escalate accordingly. If the violator de-escalates the noncompliance, the level of force employed must de-escalate accordingly." (*Id.*). Verbal commands have to be used before any level of force. (*Id.*, § V.D). Progressively, officers may use (1) restraint and control techniques; (2) chemical agents and/or a taser; (3) temporary incapacitation; and then (4) deadly force. (Doc. 27-13, Use of Force Policy, § V. D; doc. 27-13, CM/ECF p. 10, Taser Use of Force Policy; doc. 34-11, Francis Dep. CM/ECF p. 18)."Sharp blows with hands, feet, baton, or other hard objects to the head, face and neck may result in

8

severe damage and may be life threatening. Therefore, officers are specifically directed to make every effort to avoid striking those areas when overcoming resistance." (Doc. 27-13, Use of Force Policy, § VI. C).

Based on the foregoing, we reject Plaintiffs' argument that the Township has a formal policy of permitting the use of unconstitutional force by its police officers.

Plaintiffs also argue that the Township can be liable for the actions of its police officers because Chief Francis "ratified" their conduct by finding no fault with it after his review of the officers' conduct that night. This argument fails for lack of causation, as the chief's review occurred after the incident and hence could not have caused the police officers' actions. A single decision by a policymaker could possibly lead to the conclusion that the municipality had an unconstitutional policy, *see Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003), but to recover plaintiffs also have to prove causation. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 404-05, 117 S.Ct. 1382, 1388-89, 137 L.Ed.2d 626 (1997). Here, there is no causation, or as the defendants phrase it, no "the moving force" by the chief behind the violation. *Id.* at 405, 117 S.Ct. at 1389.

Plaintiffs next argue that the Township's liability can be based on the chief's deficient review of the officers' conduct. They cite their expert's opinion that Chief Francis's

casual review of the incident encourages reckless conduct by Township police officers.[1] We reject this argument because it is the policymaker's knowledge of, and acquiescence in, prior unconstitutional practices that establishes the custom upon which liability can be based, not the acts that are the subject of the lawsuit. *See Watson*, *supra*, 478 F.3d at 157 ("a Plaintiff does not raise a reasonable inference of a well-settled custom by restating the behavior that is the subject of their complaint.").

Finally, Plaintiffs argue that the Township's liability can be based on a failure to train its officers. In the absence of an unconstitutional policy, that is a valid theory of recovery against a municipality. *See Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). But in advancing this theory, Plaintiffs rely on their position that Officer Williams's deposition testimony is evidence of such a deficient policy on the use of force that training was needed. Since we have decided that this position does not accurately reflect the Township's policy, we reject a failure to train as a basis for the Township's liability.

Based on the foregoing, we will enter judgment in favor of the defendant Township on Plaintiffs' excessive force claim against it. However, we will not dismiss the Township from

---

[1] In reviewing the incident, Francis simply read the officers' statements reporting it; he conducted no independent investigation. (Doc. 34-11, Francis Dep. at CM/ECF pp. 14-15).

the case because Plaintiffs also alleged that it has a policy of allowing its police officers to engage in false arrest and malicious prosecution, and the summary judgment motion did not address that claim.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: September 24, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH DOLL, SR. and :
KENNETH DOLL, JR.
    Plaintiffs :

    vs. : CIVIL NO. 1:CV-08-0675

PATROLMAN TERRY D. WILLIAMS, :
individually and as a police officer
for the TOWNSHIP OF CARROLL, and :
PATROLMAN MICHAEL BAILEY,
individually and as a police officer :
for the TOWNSHIP OF CARROLL, and
the TOWNSHIP OF CARROLL, :
    Defendants

*O R D E R*

AND NOW, this 24th day of September, 2009, it is ordered that:

    1. The defendants' motion (doc. 27) for partial summary judgment is granted in favor of the defendant Township and against Plaintiffs on Counts II, IV, V and VI of the amended complaint.

    2. In all other respects, the motion is denied.

    3. The Clerk of Court shall enter judgment in favor of defendant Carroll Township and against Plaintiffs on Counts II, IV, V and VI of the amended complaint.

                      /s/William W. Caldwell
                        William W. Caldwell
                        United States District Judge